```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

United States of America

    **v.**                                                    Case No. 04-cr-126-01/06-PB

**Robert J. Gagalis, et al.**

### MEMORANDUM AND ORDER

Defendants are charged with several counts of securities fraud in connection with their roles as officers and employees of Enterasys Network Systems, Inc. ("Enterasys"). Before me are their motions to dismiss count five of the superseding indictment, which charges the defendants with making false and misleading statements to Enterasys's outside auditors in 2001. The government objects. For the reasons set forth below, I deny defendants' motions.

### I.   BACKGROUND

Count five of the superseding indictment, entitled "Securities Fraud: False Statements to Auditors; Aiding and Abetting," charges that the defendants:

[K]nowingly and willfully made, and caused to be made, materially false and misleading statements, and omitted to state or caused others to omit to state material facts, necessary to make the statements made not misleading, to Enterasys' outside auditors, in connection with an examination of the financial statements, quarterly review, and the preparation and filing of a document and report required to be filed with the SEC.  Specifically, the defendants: (a) concealed, and caused others to conceal, from Enterasys' outside auditors, revenue associated with the GEMMS, Paraprotect and Worldlink transactions so as to hide the true substance of those transactions; (b) stated and caused others to state that the altered Letter of Agreement in the Ariel transaction was executed on or about August 31, 2001, when, in fact, they knew it was not executed until on or about September 20, 2001; (c) concealed and caused others to conceal the secret side letters in the Ariel and Tech Data transactions; and (d) falsely stated, and caused others to falsely state, in a management representation letter that: (i) the company had made available to its outside auditors all relevant records, including side letters; (ii) there had been no instances of fraud by any member of management and by employees who have significant roles in internal control; (iii) there had been no instances of fraud by others at Enterasys that could have a material effect on the company's financial information; (iv) there had been no violations and no possible violations of laws or regulations the effects of which should be considered for disclosure in financial information; and (v) revenue recognized had been modified to the extent appropriate when a right of return or other significant future obligation existed.

    All in violation of Title 15, United States Code, Sections 78ff, Title 17, Code of Federal Regulations, Section 240.13b2-2, and Title 18, United States Code, Section 2.

Superseding Indictment ¶ 104.

Count five charges defendants with violating 15 U.S.C. § 78ff, 17 C.F.R. § 240.13b2-2 ("Rule 13b2-2") and 18 U.S.C. § 2.[1]  15 U.S.C. § 78ff(a) imposes criminal liability for willful violations of the Securities Exchange Act of 1934 ("Exchange Act") or "any rule or regulation thereunder the violation of which is made unlawful or the observance of which is required under the terms of [the Act]".  At the time defendants' alleged conduct occurred, Rule 13b2-2 provided:

> No director or officer of an issuer shall, directly or indirectly,
>
> (a) Make or cause to be made a materially false or misleading statement, or
>
> (b) Omit to state, or cause another person to omit to state, any material fact necessary in order to make statements made, in the light of the circumstances under which such statements were made, not misleading to an accountant in connection with (1) any audit or examination of the financial statements of the issuer required to be made pursuant to this subpart or (2) the preparation or filing of any document or report required to be filed with the Commission pursuant to this subpart or otherwise.

---

[1] 18 U.S.C. § 2, the federal aiding and abetting statute, provides that anyone who "commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  18 U.S.C. § 2(a).

17 C.F.R. § 240.13b2-2 (2003) (amended May 28, 2003).

## II.  DISCUSSION

Defendants argue that count five should be dismissed because: (1) the Securities Exchange Commission ("SEC") lacked the statutory authority to promulgate Rule 13b2-2, on which count five is based; (2) Rule 13b2-2 could not have served as the basis for a prosecution under 15 U.S.C. § 78ff in 2001, when defendants allegedly violated the rule; and (3) 15 U.S.C. § 78m(b)(5) prohibits the imposition of criminal liability for the conduct on which count five is based.  I address each argument in turn.

**A.  SEC's authority to promulgate Rule 13b2-2**

In order to address defendants' argument that the SEC lacked the statutory authority to promulgate Rule 13b2-2, I first discuss the history of the Rule.

**1.  History of Rule 13(b)2-2**

Beginning in 1973, as a result of the Watergate scandal, the SEC began investigating the undisclosed use of corporate funds for illegal domestic political contributions.  See Securities Exchange Act Release No. 13185, 11 SEC Docket 1514,

-4-

1977 WL 174077, at *2 (January 19, 1977). On May 12, 1976, the SEC issued a report to Congress entitled "Report on Questionable and Illegal Corporate Payments and Practices," which included its findings and recommendations for legislation to prevent further abuses.

Before Congress acted on the SEC's recommendations, the SEC announced four proposed rules that would: (1) require registered issuers to "maintain books and records accurately reflecting the transactions and dispositions of assets of the issuer;" (2) require such issuers to "maintain an adequate system of internal accounting controls designed to provide reasonable assurance that specified objectives are satisfied;" (3) "prohibit the falsification of an issuer's accounting records;" and (4) "prohibit the officers, directors, or stockholders of an issuer from making false, misleading or incomplete statements to an accountant engaged in an examination of the issuer." Id. at *1.

After the proposed rules were released for public comment but before they were adopted, Congress enacted § 13(b)(2) of the Exchange Act (codified at 15 U.S.C. § 78(m)(b)(2)).[2] The

---

[2] Section 13(b)(2) of the Exchange Act was enacted as part of the Foreign Corrupt Practices Act ("FCPA"). See Pub. L. No.

original Senate bill (S. 305) included all four of the SEC's proposed rules.  H.R. Conf. Rep. No. 95-831, at 10 (1977), reprinted in 1977 U.S.C.C.A.N. 4120, 4123.  The House amendments to S. 305 struck all four provisions from the bill "because the SEC had already published for comment rules designed to accomplish similar objectives under its existing authority."  Id. The House subsequently agreed to include the first two proposed rules (requiring issuers to maintain accurate records and an internal accounting system) in § 13(b).  The Senate acquiesced to deletion of the other two proposed rules, noting that "[a]lthough these provisions were supportive of the basic accounting section," the use of the word "knowingly" in the proposed legislation raised issues presented by the Supreme Court's decision in Ernst & Ernst v. Hochfelder, 425 U.S. 185 (1976). H.R. Conf. Rep. No. 95-831, at 10.  The House Conference Report stated that "[i]n deleting the Senate provisions, the conferees intend that no inference should be drawn with respect to any

---

95-213, 91 Stat. 1494 (1977).  The statute provides, in relevant part, that every issuer shall "make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer" and "devise and maintain a system of internal accounting controls."  15 U.S.C. § 78m(b)(2)(A)-(B).

rulemaking authority the SEC may or may not have under the securities laws." Id. at 11.

Subsequent to the enactment of § 13(b), the SEC released revised versions of the third and fourth proposed rules. See Securities Exchange Act Release No. 15570, 16 SEC Docket 1143, 1979 WL 173674 (February 15, 1979). In 1979, the SEC adopted the regulations as Rules 13b2-1 (17 C.F.R. § 240.13b2-1), prohibiting the falsification of books and records, and Rule 13b2-2 (17 C.F.R. § 240.13b2-2), prohibiting the making of false or misleading statements to accountants. In doing so, the SEC stated that although the rules would be codified with other rules promulgated under § 13 of the Exchange Act, it was not relying exclusively on § 13 as the foundation for the rules. Release No. 15570, 1979 WL 173674, at *6.

The conduct addressed by Rule 13b2-2 ultimately was explicitly prohibited by statute when Congress passed the Sarbanes-Oxley Act in 2002. See 15 U.S.C. § 7242(a).

**2. Analysis**

Defendants argue that the SEC exceeded its rulemaking authority when it adopted Rule 13b2-2 because the conduct it purported to regulate was not prohibited under the Exchange Act.

-7-

They maintain that the Rule represents an attempt by the SEC to implement proposed legislation that Congress "rejected" when it enacted § 13(b).  The government counters that the SEC had the authority to promulgate Rule 13b2-2 pursuant to its general rulemaking authority under § 23(a) of the Exchange Act.  See Release No. 15570, 1979 WL 173674, at *6-7.

Section 23(a) gives the SEC the power to "make such rules and regulations as may be necessary or appropriate to implement the provisions" of the Exchange Act.  15 U.S.C. § 78w(a)(1).  When the SEC originally proposed Rule 13b2-2, it stated that the rule was "necessary or appropriate" to implement the "periodic reporting requirements" of the Exchange Act, as well as sections 10(b), 14(a), 20(b) and 20(c).[3]  Release No. 13185, 1977 WL 174077, at *7-8.  In particular, the SEC found that "[t]he accountant's examination of the issuer's financial statements is

---

[3] Section 10(b) prohibits the use of manipulative or deceptive devices in connection with the purchase or sale of a security.  15 U.S.C. § 78j(b).  Section 14(a) governs proxy solicitations.  Id. § 78n(a).  Section 20(b) prohibits unlawful conduct performed through or by the means of another person.  Id. § 78t(b).  Section 20(c) makes it unlawful for a director or officer of an issuer to hinder, delay or obstruct without just cause the filing of any required document, information or report.  Id. § 78t(c).

one of the key safeguards to the reliability of the system of financial disclosure; to the extent that individuals hamper or frustrate the accountant's work, the reliability of that system is diluted." Id. at *8.  Later, when it adopted the final version of Rule 13b2-2, the SEC also stated that the Rule would "promote compliance with the requirement of new Section 13(b)(2)(B) that issuers devise and maintain a system of internal accounting controls."  See Exchange Act Release No. 15570, 16 SEC Docket 1143, 1979 WL 173674, at *11 (February 15, 1979).

The issue before me is thus whether the SEC correctly concluded that it had the statutory authority to promulgate regulations prohibiting issuers from making false or misleading statements to auditors.  My analysis of this issue is governed by the two-step process announced in Chevron, U.S.A., Inc. v. NRDC, 467 U.S. 837, 842-43 (1984).  See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 125 S. Ct. 2688, 2699 (U.S. 2005) (applying Chevron to FCC's authority under 47 U.S.C. § 201(b) to "prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions" of the Communications Act of 1934); NLRB v. Beverly Enterprises-Massachusetts, Inc., 174 F.3d 13, 32 (1st Cir. 1999) (giving

Chevron deference to regulations promulgated under Board's authority "to make such rules and regulations as may be necessary to carry out the provisions of [the National Labor Relations Act]," 29 U.S.C. § 156).

Chevron first requires that I consider "whether the statute's plain terms 'directly address the precise question at issue.'" Nat'l Cable, 125 S. Ct. at 2702 (quoting Chevron, 467 U.S. at 843) (brackets omitted).  If instead "the statute is silent or ambiguous with respect to the specific issue," the question becomes "whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843.  Where Congress has given "an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," such regulations are "given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. at 843-44; see also United States v. O'Hagan, 521 U.S. 642, 673 (1997).

Section 23(a) gives the SEC broad but ambiguous rulemaking authority to adopt such regulations as are "necessary or

appropriate" to implement the provisions of the Exchange Act.[4] Because this grant of authority is ambiguous, I must determine whether the SEC's promulgation of the Rule was based on a permissible construction of the statute. In its May 12, 1976 report, the SEC concluded that "[m]illions of dollars of funds have been inaccurately recorded in corporate books and records. . . . Such falsification of records has been known to corporate employees and often to top management, but often has been concealed from outside auditors and counsel and outside directors." Release No. 15570, 1979 WL 173674, at *2. The SEC determined that Rule 13b2-2 was "necessary or appropriate" to implement the various disclosure provisions because "the accountant's examination or audit of the financial statements of the issuer is a crucial element in safeguarding the reliability

---

[4] Defendants argue that Hochfelder, a pre-Chevron case, stands for the proposition that the SEC does not have the power to regulate a broader range of conduct than that which is explicitly proscribed by statute. See Hochfelder, 425 U.S. at 212. In Hochfelder, the Supreme Court held that Rule 10b-5 could not be construed to permit liability without proof of scienter because the language of § 10(b) and its legislative history demonstrated that Congress only intended to address intentional wrongdoing. Id. at 214. Unlike here, only the first step of the Chevron analysis was required in Hochfelder because § 10(b) unambiguously required proof of scienter.

of the information that is disclosed to the public pursuant to the disclosure requirements of the Securities Exchange Act." Id. at *12.  Likewise, the SEC found that the Rule would promote compliance with new § 13(b) by acting as a "deterrent to the falsification of corporate books, records and accounts and to the making of false, misleading or incomplete statements . . . that might conceal the falsification of such books and records." Id. at *11.

These conclusions are reasonable in light of the SEC's findings and the purpose and history of the Exchange Act.  There is nothing in the plain language of the statute that manifestly contradicts the SEC's determinations.  The legislative history of § 13(b) does not suggest that Congress intended to prohibit adoption of the Rule; indeed, the House Conference Report explicitly stated that "no inference should be drawn with respect to any rulemaking authority the SEC may or may not have" with regard to the omitted rules.  H.R. Conf. Rep. No. 95-831, at 11. Contrary to defendants' assertions,[5] the fact that Congress chose

---

[5] Defendants analogize this case to FCC v. ABC, 347 U.S. 284 (1954), in which the FCC "attempt[ed] to do an end-run around Congress" by adopting regulations after Congress failed to act on its proposed legislation.  Def. Mem. of Law in Support of Mot. to

-12-

not to include all of the proposed rules in § 13(b) does not compel the conclusion that it intended to limit the SEC's authority to regulate in this area. I thus conclude that the SEC's determination that Rule 13b2-2 was necessary or appropriate to implement provisions of the Exchange Act is entitled to deference under Chevron. See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002) ("The [agency's] judgment that a particular regulation fits within this statutory constraint must be given considerable weight.") Accordingly, dismissal of count five is not warranted on this basis.

**B.   Criminal liability under 15 U.S.C. § 78ff**

Defendants next argue that even if Rule 13b2-2 is valid, they cannot be held criminally liable for violations of the Rule under 15 U.S.C. § 78ff. Section 78ff provides that criminal liability may be imposed on "[a]ny person who willfully violates any provision of [the Exchange Act] . . . or any rule or regulation thereunder the violation of which is made unlawful or

---

Dismiss at 14. The Court found that the FCC's interpretation of the Criminal Code "stretch[ed] the statute to the breaking point" and lacked support in decided judicial and administrative cases. ABC, 347 U.S. at 294, 296. Such a conclusion is not warranted here.

<u>the observance of which is required</u> under the terms of this chapter."  15 U.S.C. § 78ff(a) (emphasis added).

Defendants contend that the conduct proscribed by Rule 13b2-2 cannot be punished under § 78ff because it was not "unlawful" under the Exchange Act prior to passage of the Sarbanes-Oxley Act in 2002.  This argument misses the point.  Section 78ff criminally punishes the violation of rules that must be observed under the Exchange Act.  As I have explained, Rule 13b2 was a valid exercise of the SEC's authority to promulgate regulations and thus it has the force and effect of law.  <u>See</u> <u>Chrysler Corp.</u> <u>v. Brown</u>, 441 U.S. 281, 295 (1979).  Therefore, I conclude that a willful violation of Rule 13b2-2 may result in criminal liability under § 78ff(a).

## C.    <u>15 U.S.C. § 78m(b)</u>

Finally, defendants argue that count five must be dismissed pursuant to 15 U.S.C. § 78m(b)(5).  The short answer to this argument is that the provision defendants rely on applies only to prosecutions under 15 U.S.C. § 78m(b)(2).  Count 5 is based on Rule 13b2-2 and § 78ff.  Thus, defendants' argument necessarily fails.

### III.  CONCLUSION

Defendants' motions to dismiss count five of the indictment (Doc. Nos. 121, 149) are denied.

SO ORDERED.

/s/Paul Barbadoro  
Paul Barbadoro  
United States District Judge

March 20, 2006

cc:  William Morse, AUSA  
    Peter Anderson, Esq.  
    Christopher H.M. Carter, Esq.  
    William Cintolo, Esq.  
    Philip Cormier, Esq.  
    Victor Dahar, Esq.  
    Mark Dubnoff, Esq.  
    Andrew Good, Esq.  
    Cathy Green, Esq.  
    John Kissinger, Esq.  
    Michael Koenigk Esq.  
    Richard McCarthy, Esq.  
    Michelle Peirce, Esq.  
    Karen Picket, Esq.  
    Michael Ramsdell, Esq.  
    James Rehnquist, Esq.  
    Eva Saketkon, Esq.  
    Bruce Singal, Esq.  
    David Vicinanzo, Esq.